Case 2:15-cv-00380   Document 21   Filed in TXSD on 07/19/16   Page 1 of 13

United States District Court
Southern District of Texas
**ENTERED**
July 19, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| BELINDA L. CRUZ, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:15-CV-380 |
| | § | |
| CENTENE CORPORATION; dba | § | |
| CENTENE COMPANY OF TEXAS, | § | |
| | § | |
| Defendants. | § | |

## ORDER ON MOTION FOR SUMMARY JUDGMENT

Plaintiff Belinda Cruz (Cruz) filed this action against her former employer, Centene Corporation (Centene), alleging claims for gender discrimination, sexual harassment, and retaliation regarding the termination of her employment after an inappropriate relationship with her supervisor, Pedro Benavides (Benavides) came to light. Before the Court is Centene's motion for summary judgment (D.E. 16), arguing that there are legally insufficient facts to support certain of the necessary elements of Cruz's claims. Cruz has responded and Centene has replied (D.E. 19, 20). For the reasons set out below, the Court OVERRULES Cruz's objections to Centene raising affirmative defenses and GRANTS IN PART and DENIES IN PART the motion for summary judgment.

A. **Standard of Review**

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52. In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits, and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002).

The Court may not weigh the evidence, or evaluate the credibility of witnesses. *Id*. Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." FED. R. CIV. P. 56(e); *see also Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992) (*per curiam*) (refusing to consider affidavits that relied on hearsay statements); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) (*per curiam*) (stating that courts cannot consider hearsay evidence in affidavits and depositions). Unauthenticated and unverified documents do not constitute proper summary judgment evidence. *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (*per curiam*).

With respect to a claim on which it does not bear the burden of proof at trial, the moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a

genuine issue for trial does exist. *Matsushita Elec. Indus. Co. v.* Zenith *Radio Corp.*, 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. FED. R. CIV. P. 56(e); *Anderson*, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni*, 278 F.3d at 451.

With respect to a claim on which the movant bears the burden at trial, such as a defendant's request for summary judgment on an affirmative defense, the movant bears the burden of conclusively establishing every element of that claim or affirmative defense. *Celotex, supra* at 322. A no-evidence summary judgment is not appropriate in such circumstances.

The evidence must be evaluated under the summary judgment standard to determine whether the moving party has shown the absence of a genuine issue of material fact. "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

### B. Gender Discrimination/Sexual Harassment

The parties take disparate approaches to Cruz's pleadings. Centene approaches the gender discrimination and harassment claims separately. With respect to the requirements of a prima facie case of the former, it advances a list of four elements that includes showing that others similarly situated were treated more favorably. *See Willis v. Coca Cola Enterprises, Inc.*, 445 F.3d 413, 420 (5th Cir. 2006). Cruz has pled that she

was treated differently from her male counterparts. D.E. 1, ¶ 19. However, she has failed to name any comparator.

If the Court were to use Benavides—the only male discussed in this case—as the comparator, it is clear that he, too, was terminated as a result of the events of this case. Thus there was no more favorable treatment of record. To the extent that Cruz seeks to prosecute a claim based purely on gender discrimination as a disparate treatment issue, the Court GRANTS the motion for summary judgment and DISMISSES the claim.

Yet Cruz, in her response, approaches the gender discrimination and harassment claims jointly, as a hostile work environment claim. For a prima facie case of this claim, there are five elements she will have to prove:

>	(1) She belongs to a protected group;
>
>	(2) She was subject to unwelcome sexual harassment;
>
>	(3) The harassment complained of was based upon sex;
>
>	(4) The harassment complained of adversely affected the terms or conditions of her employment; and
>
>	(5) Centene knew or should have known of the harassment in question and failed to take prompt remedial action.

*Waltman v. Int'l Paper Co.*, 875 F.2d 468, 477 (5th Cir. 1989). There is no dispute that the facts meet the first and third elements. Centene's motion is based on the contention that Cruz either initiated the sexual communications or at least willingly participated in them as a consenting party, such that they fail the test of being unwelcome. Centene also argues that any harassment was not sufficiently severe and pervasive to affect Cruz's

employment. In so doing, Centene offers Cruz's own testimony as undisputed and seeks summary judgment because there is no fact issue to submit to a jury.

There are at least three problems with the argument that the communications were not unwelcome. First, harassment may be subtle, and what is—on its face—consensual or voluntary may truly be coerced under all of the circumstances. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 68 (1986). Cruz's admission that she played along with Benavides's requests is not determinative. Second, getting caught up in a retaliative scenario, as Cruz describes, is still actionable. *See generally*, *Ellert v. Univ. of Texas, at Dallas*, 52 F.3d 543, 545 (5th Cir. 1995). And third, there is some evidence that Cruz resisted Benavides's requests by ceasing activity and backing away from hugs, indicating that they were unwelcome, but he used his power to manipulate her back into the relationship he desired.

According to Cruz, Benavides made it clear that he would nit-pick her work performance with his superiors and embarrass her with her colleagues when she did not play along with his sexual communications. Her testimony indicates that she feared escalation and that he could retaliate against her at the eventual cost of her job. So she appealed to his prurient interests to maintain her employment. Thus the issue with respect to whether or not the sexual communications were unwelcome is not simply "what" she did, but "why" she did it. This is a fact issue for the jury even if her testimony is taken as undisputed. The testimony on which Centene relies is not dispositive of this issue.

With respect to the severity of the harassment, the record reflects retaliatory behavior, both with respect to Benavides's criticism of her and with respect to what her co-workers were able to get away with in their non-sexual, but rude, treatment of her. Whether all of the office environment was linked to the sexual harassment is a question that cannot be decided as a matter of law on this record. Cruz testified that the harassment was so disturbing that she had difficulty focusing on new job responsibilities and took to drinking alcohol and taking Ambien in order to sleep. There is sufficient evidence to raise a fact issue on whether the situation was severe and pervasive or a sufficient alteration of the terms of employment to recover against Centene.

While there is a fifth issue to a prima facie case, Centene has not challenged it in its motion. There is a disputed issue of material fact with respect to issues two and four. Issues one and three are conceded. And issue five was not addressed. Therefore, the Court DENIES the motion for summary judgment on the harassment/hostile work environment claim.

### C. *Ellerth/Faragher* Defense

Centene raises an *Ellerth/Faragher* affirmative defense. In a case that does not involve a tangible employment action,[1] an employer may escape liability by demonstrating that (a) it exercised reasonable care to prevent and correct promptly any such sexual harassment, and (b) the employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm

---

[1] It is unclear whether the *Ellerth/Faragher* defense applies in this case where Cruz was terminated. *Casiano v. AT&T Corp.*, 213 F.3d 278, 283-84 (5th Cir. 2000). However, neither party briefed this issue.

otherwise. *Casiano v. AT&T Corp.*, 213 F.3d 278, 283-84 (5th Cir. 2000). In that respect, Centene offers its Employee Handbook provisions regarding non-discrimination and anti-harassment policies and its Harassment Sensitivity Training, receipt of which Cruz has acknowledged.

Cruz objects to Centene's invocation of this affirmative defense without first having pled it. *See* Answer, D.E. 5. After due consideration, the Court determines that Centene raised the defense at a pragmatically sufficient time and that Cruz has not shown that she was prejudiced in her ability to respond. *Kostic v. Texas A & M Univ. at Commerce*, 11 F. Supp. 3d 699, 712-13 (N.D. Tex. 2014). The Court permits Centene to raise this defense. But that does not mean that the defense protects Centene as a matter of law.

Centene's non-discrimination policy includes, "All employees are responsible for helping to assure that discrimination is avoided. Any employee who feels that he or she has experienced or witnessed discrimination, or becomes aware of possible discrimination, is to notify a supervisor of the Company or the Human Resources immediately." D.E. 16-5. Likewise, "All employees are responsible for helping us identify, avoid, and eliminate harassment in the workplace. Any employee who feels that he or she has experienced or witnessed harassment, or becomes aware of possible harassment, is to notify a supervisor of the Company or the Human Resources immediately." D.E. 16-5. Centene complains that Cruz unreasonably failed to take advantage of its preventative or corrective measures because she failed to report the offensive behavior.

In her response, Cruz addresses both elements of the *Ellerth/Feragher* defense. First, she suggests that Centene did not work promptly to correct the sexual harassment. She testifies that, under these facts, she was the victim and should have had an opportunity to continue in her job. In other words, terminating her employment had the effect of perpetuating the harassment rather than remedying it. Centene's reasonable care in this context has been placed in question.

Second, she has shown that, at the time of the behavior, Centene did not have a human resources office available at her worksite, despite the large number of employees situated there. It was only after this event that Centene established such an office there. The jury could also conclude that it was not unreasonable to remain quiet about these matters, considering that airing them only got Cruz fired. Thus she has raised a disputed issue of material fact whether Centene's response to the situation was a reasonable remedy and whether her failure to report was unreasonable. The Court DENIES Centene's motion for summary judgment on the *Ellerth/Faragher* defense.

**D. Retaliation**

Title VII imposes liability for unlawful retaliation where an employee engaged in activity protected by Title VII, the employer took adverse employment action against the employee, and a causal connection exists between that protected activity and the adverse employment action. *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 42 (5th Cir. 1992). "It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this

subchapter." 42 U.S.C.A. § 2000e-3. Centene asserts that, as a matter of law, Cruz did not engage in protected activity and, if she did, it was not the cause of her termination.

Cruz responds that it was a protected activity for her to confirm the harassing conduct after Benavides reported it and Centene interviewed her in the course of its investigation. The statute supports this viewpoint in that she "testified, assisted, or participated" in the investigation. Centene's argument that the investigation triggered by Benavides's report (which involved sexually-charged communications between an employee and her supervisor) did not trigger concerns about an unlawful employment practice under Title VII is without merit. *E.g., Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66-67 (1986).

Centene also argues that, by failing to tell the whole truth about the matter, Cruz disqualified herself from treating her cooperation as a protected activity. *Dupont-Lauren v. Schneider (USA), Inc.*, 994 F. Supp. 802, 823 (S.D. Tex. 1998). In *Dupont-Lauren*, however, the plaintiff denied discrimination, refused to answer questions about discrimination, and then gave evasive answers that had the effect of negating any claim of discrimination. Under those circumstances, the plaintiff was not permitted to draw upon informal complaints to support the allegation that the employer was on notice of a claim of discrimination.

Here, Cruz cooperated with the investigation and provided a number of candid responses that may ultimately undermine her claim. But while she may not have told the whole truth in that investigation, Centene has not demonstrated that she obstructed the investigation to the point that they could not determine that Benavides's sexual

harassment of Cruz was at issue. Cruz's level of cooperation with the investigation is not such as to defeat her claim that the investigation had to do with Title VII violations. To support a claim of protected activity, the proceedings must be concerned with Title VII issues. Whether or not a Title VII violation is ultimately confirmed, the investigation still constitutes a protected activity.

With respect to causation, Centene admits that, when terminating Cruz, it relied—at least in part—on Cruz's responses to questions propounded in the investigation. So the Court cannot state, as a matter of law, that Cruz's participation in the harassment investigation did not cause her termination. The Court DENIES the motion for summary judgment on the retaliation claim.

### E. Non-Retaliatory Reason for Termination and Pretext

Last, Centene argues that, as a matter of law, it had a legitimate non-retaliatory reason to terminate Cruz: "her lack of judgment by participating in an inappropriate texting relationship." D.E. 16, p. 20. Once again, Cruz objects to Centene's invocation of an affirmative defense that was not previously pled. For the same reasons outlined with respect to the *Ellerth/Feragher* affirmative defense, the Court OVERRULES Cruz's objection to Centene's reliance on this issue.

Given that Cruz's argument is that she participated in the inappropriate texting relationship because she was being harassed into it, and because the allegedly non-retaliatory reason for discharge is so closely related to the report of harassment and her participation in the investigation, the Court is not willing to hold, as a matter of law, that Centene's explanation for the termination represents a separate, non-retaliatory non-

pretextual reason for discharge.  Centene acted, at least in part, on information supplied by Benavides, who sought to exculpate himself in this matter.  The evidence is sufficient to raise a disputed issue of material fact as to whether Cruz's allegedly poor judgment was the cause or the effect of the inappropriate sexual harassment by her supervisor.

Neither can Centene avoid the consequences of a retaliatory firing on the argument that Centene, rather than Benavides, made the decision to terminate Cruz's employment. Centene relies on *Stevens v. Saint Elizabeth Med. Ctr., Inc*., 533 F. App'x 624, 632 (6th Cir. 2013).  In that case, as in this one, the alleged harassing supervisor was terminated immediately prior to the employee's termination by a corporate officer who was not involved in the harassment scenario.  That officer gave independent reasons for the terminations that had to do with ending a disruption of the office.

While the *Stevens* opinion notes that it was not the alleged harasser who made the decision to terminate the employee, that observation was only one reason for the finding that there was a non-retaliatory reason for the termination.  It was not treated as dispositive.  Here, the allegedly non-discriminatory reason given for terminating Cruz is more difficult to parse from the sexual harassment she alleges.  It does not stretch credulity much to view Centene's termination of Cruz on the rationale of "poor judgment" as pretextual—contriving a reason for terminating her as a victim of sexual harassment who spoke up about it, perhaps too late.  The jury could view it as Benavides making a successful preemptive attack in order to cast greater responsibility for the relationship on Cruz than what her actions merit under the totality of the circumstances. While it may have backfired on Benavides, it placed Cruz in the difficult position of

appearing too complicit.  It is up to a jury to sort through the evidence and determine where the truth lies.

In a footnote in its reply, Centene also relies on *Casiano v. AT&T Corp.*, 213 F.3d 278, 285 (5th Cir. 2000) for the proposition that there is no claim if the adverse employment action was not meted out by the harassing supervisor.  However, *Casiano* is clear in stating that the terms on which the employee in that case was denied access to a better job program involved passing a test and other matters on which the supervisor had no input.  Here, Benavides made sure he had the first opportunity to frame the issues in Centene's view of his relationship with Cruz and his initiation of the complaint and evidence offered in support of his complaint were taken into consideration.  Thus the decision to terminate Cruz is not insulated from Benavides's influence.

Likewise, the opinion in *Harper v. City of Jackson Mun. Sch. Dist.*, 149 F. App'x 295, 299 (5th Cir. 2005), on which Centene also relies, observes that there was no link between the harassing supervisor and the adverse employment decision.  That factual scenario stands in stark contrast to the events that precipitated Cruz's termination here.  The Court DENIES Centene's motion for summary judgment on the defense of a legitimate non-discriminatory reason for discharge.

## CONCLUSION

For the reasons set out above, and pursuant to the summary judgment standard of review by which the evidence is construed in favor of the non-movant, the Court OVERRULES Cruz's objections to Centene's reliance on affirmative defenses, GRANTS IN PART the motion for summary judgment (D.E. 16) on the issue of gender

discrimination in the form of disparate treatment, dismissing that claim, and DENIES IN PART the balance of the motion for summary judgment (D.E. 16).

ORDERED this 19th day of July, 2016.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE